IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEE A. GAINES, | ) |
| | ) |
| Plaintiff, | ) Case No. 18-cv-5117 |
| | ) |
| | ) Judge Robert M. Dow, Jr. |
| v. | ) |
| | ) |
| SHERYL BERNS, et al., | ) |
| | ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lee A. Gaines, formerly a detainee at the Cook County Jail, brought this *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983 concerning treatment for an infection in his arm caused by Methicillin-resistant Staphylococcus aureus ("MRSA"). The Court recruited counsel for Plaintiff, who filed a two-count First Amended Complaint alleging deliberate indifference to his serious medical needs and medical negligence [15]. Recruited counsel was allowed to withdraw [43], and Plaintiff is now proceeding *pro se*. Defendants moved for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies [73]. Plaintiff has not responded despite being given multiple opportunities to do so. [See 72, 80, 84.] Nevertheless, Defendants' motion for summary judgment [73] is denied.

Given the potential complexity of the case going forward, the Court requests that Attorney Lawrence Wolf Levin, Law Office of Lawrence Wolf Levin, 214 West Ohio, 5th Floor, Chicago IL 60654, lwlwolflaw@gmail.com, accept the Court's invitation to represent Plaintiff in this case in accordance with counsel's trial bar obligations under N.D. Ill. Local Rules 83.11(h) and 83.37.[1]

---

[1] Recruited counsel falls within the class of users listed in the Electronic Public Access fee schedule adopted by the Judicial Conference of the United States, therefore, the above-named attorney shall be exempt from the payment of fees for access via PACER to the electronic case files maintained in this court for the above-

Recruited counsel is directed to file an appearance by April 4, 2022. By May 2, 2022, the parties are directed to file a joint status report regarding the next steps in this case and the possibility of settlement. In addition to Plaintiff, the Clerk is directed to send a copy of this order to recruited counsel, the PACER Service Center, and the Systems Department.

I.     **Background and Undisputed Material Facts**

Plaintiff is a resident of Chicago. [See 74, at ¶ 1.] From September 8, 2016, through February 10, 2017, and at all relevant times, Plaintiff was a pretrial detainee at the Cook County Jail. [*Id.*] During this time period, and at relevant times, Defendants worked for Cook County and held the following medical positions at Cermak Health Services within the jail: Defendants Sheryl Burns, Deborah Collymore, and Monina Mercado Jude were registered nurses [*id.* at ¶¶ 2-3, 6]; Defendants Andrew Q. De Funiak, Fayes M. Mekhael, and Sunita B. Williamson were medical doctors [*id.* at ¶¶ 4-5, 10]; Defendant Terry Merriweather was a correctional medical tech [*id.* at ¶ 7]; and Defendant Andrey Shindrayev was an emergency response tech, as was Defendant Peggy A. Westbrook [*id.* at ¶¶ 8, 9]. Jurisdiction and venue are proper in this Court. [*Id.* at ¶¶ 11-13.]

Plaintiff submitted his initial complaint while he was still jailed. [*Id.* at ¶ 14.] His amended complaint was filed on January 18, 2019, also while Plaintiff remained in custody. [*Id.* at ¶¶ 15, 16.] Plaintiff's amended complaint alleges that Defendants were deliberately indifferent to his

---

captioned case only. The assigned attorney shall not be exempt from the payment of fees incurred in connection with other uses of the PACER system in this court. This exemption is valid immediately and for the duration of the attorney's participation in the matter. This exemption may be revoked at the discretion of the Court at any time. The attorney shall contact the PACER Service Center at 1-800-676-6856 or via the link below to make any necessary arrangements for the waiver. A copy of this order shall be sent to the PACER Service Center at https://pacer.uscourts.gov/. A copy of this order shall also be sent to the Systems Department of the Northern District of Illinois. Plaintiff is advised that pursuant to Local Rule 83.40 and the Regulations Governing the Prepayment & Reimbursement of Expenses of Court Assigned Counsel in Pro Bono Cases from the District Court Fund, any recovery (e.g., settlement, judgment, award of fees, or costs) in excess of $50,000 requires reimbursement to the District Court Fund from such recovery for amounts paid on behalf of the receiving party in excess of $5,000.

serious medical needs and were medically negligent. [*Id.* at ¶ 17.] Specifically, Plaintiff alleged that on September 8, 2016, he noticed what appeared to be a spider bite on his left forearm, which he alleges was later diagnosed as a skin infection caused by MRSA. [*Id.* at ¶ 18.] Plaintiff alleges that from September 8, 2016, through September 14, 2016, Defendants Mekhael, Collymore, Westbrook, Burns, Shindrayev, Mercado Jude, Williamson, and De Funiak failed to provide adequate medical care for the skin infection on his left forearm, and that following his release from Cermak Health Services (the jail's hospital), Defendants Merriweather and Burns failed to timely change the dressings on his left forearm. [*Id.* at ¶ 19.]

From September 8, 2016, through September 14, 2016, Plaintiff was housed in Division 11, Tier BA. [*Id.* at ¶ 20.] From September 14, 2016, through September 15, 2016, Plaintiff was housed in Division 8, Cermak Health Services. [*Id.* at ¶ 21.] From September 15, 2016, through September 22, 2016, Plaintiff was housed in Division 2. [*Id.* at ¶ 22.] From September 22, 2016, through February 10, 2017, Plaintiff was housed in Division 11. [*Id.* at ¶ 23.]

Cook County Department of Corrections General Order 24.14.5.0 was in effect between September 8, 2016, and February 10, 2017. [*Id.* at ¶ 24.] This General Order detailed the jail's inmate grievance procedure, which required inmates to fill out and submit an inmate grievance form within 15 days of the alleged grieveable offense and to appeal the grievance response within 14 days from receipt of the response. [*Id.* at ¶ 25.] Inmates were made aware of the grievance procedures in multiple ways, including by information on the grievance form itself and the rules set forth in the inmate handbook. [*Id.* at ¶ 26.]

The grievance form used at the relevant time required inmates to provide the specific date, time and location of the incident, problem, or event complained of, and the specific action or relief they were seeking. [*Id.* at ¶ 27.] These requirements were part of the Cook County Department

3

of Corrections grievance procedures and were expressly stated on the grievance form and in the inmate handbook. [*Id.*] Grievance forms were available on the inmate's living unit or could be obtained from jail staff members upon request. [*Id.* at ¶ 28.] If grievance forms were unavailable, detainees could write a grievance on another type of paper and mark it as a grievance. [*Id.*]

The duties of a Correctional Rehabilitation Worker ("CRW") included, but were not limited to, making daily rounds of their assigned living units to collect detainee grievances or appeals. [*Id.* at ¶ 29.] During their daily rounds, CRWs were to check to ensure that an adequate supply of grievance forms was available on the living unit and replenish them if needed. [*Id.*]

Plaintiff admits that he had filed grievances at the jail prior to September 8, 2016. [*Id.* at ¶ 30.] Specifically, on April 11, 2016, Plaintiff filed a grievance requesting to go to the dispensary (referred to as the "Spring Grievance."). [*Id.* at ¶ 31.] On May 9, 2016, Plaintiff signed the response to that grievance, acknowledging he had received it, but he did not appeal. [*Id.* at ¶¶ 32-33.]

On September 12, 2016, Plaintiff submitted a grievance complaining about his having requested medical attention for the "spider bite" on his left arm from an unknown nurse on the tier the day before (referred to as "Grievance 1")[2]. [*Id.* at ¶ 34; see 74-6 at 10-11.] On October 4, 2016, Plaintiff signed the grievance response, acknowledging receipt. [*Id.* at ¶ 35.] The grievance response indicated that Plaintiff had submitted a Health Services Request Form on September 8, 2016 and had been treated by a nurse who ordered Bacitracin (an antibiotic) and Hydrocortisone (a steroid). [74-6, at 11.] Plaintiff was treated again on September 21, 2016. The wound was

---

[2] Defendants indicate that the grievance was submitted on September 13, 2016, but that appears to be the date it was received by a CRW. The Court will refer to the date written by Plaintiff on the grievances as the date of submission.

cultured and he was scheduled for follow-up. [*Id.*] Plaintiff did not appeal this grievance response. [74, at ¶ 36.]

On September 14, 2016, Plaintiff submitted a two-page grievance complaining about what he believed was inadequate medical treatment for the lump on his left arm from approximately September 8, 2016, through September 13, 2016 (referred to as "Grievance 2"). [*Id*. at ¶ 37; see 74-6 at 13-15.] On October 4, 2016, Plaintiff signed the grievance response, acknowledging that he had received it. [*Id.* at ¶ 38.] This grievance response, like the previous one, indicated that Plaintiff had been treated on September 8, 2016, and September 21, 2016. [74-6, at 15.] Plaintiff did not appeal this grievance response. [74, at ¶ 39.]

On September 18, 2016, Plaintiff submitted a grievance complaining that an unidentified nurse was not providing him with daily dressing changes for his left arm as of September 17, 2016 (referred to as "Grievance 3"). [*Id.* at ¶ 40; see 74-6 at 17-18.] On October 15, 2016, Plaintiff signed the grievance response, indicating receipt. [*Id.* at ¶ 41.] That grievance response stated that the CRW encouraged Plaintiff to complete a Health Services Request Form. [74-6, at 18.] The response also stated that the grievance had been referred to Cermak Health Services, and the response from Cermak indicated that Plaintiff had been seen by a provider on September 21, 2016, "with wound improvement," and was scheduled for follow-up care in November. [*Id.*] Plaintiff did not appeal this grievance response. [74, at ¶ 42.]

On September 28, 2016, Plaintiff submitted a grievance complaining that he had not had the gauze changed on his wound for the last three days (referred to as "Grievance 4"). [*Id.* at ¶ 43; see 74-6 at 20-21.] On October 20, 2016, Plaintiff signed the grievance response indicating receipt. [*Id.* at ¶ 44.] That grievance response stated the CRW who reviewed the grievance notified the dispensary staff in Division 11 of Plaintiff's complaint. [74-6, at 21.] The grievance also was

5

referred to Cermak, and the response indicated that Plaintiff's wound was healing well as of October 9, 2016. [*Id.*] Plaintiff did not appeal this grievance response. [74, at ¶ 45.] Plaintiff admits that the grievance response forms for all four of these grievances included the following instruction: "To exhaust administrative remedies, appeals must be made within 14 days of the date the inmate received the response." [*Id.* at ¶ 46.][3]

I.      **Legal Standard**

    A.      **Summary Judgment**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence would permit a reasonable factfinder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted.) Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local

---

[3] The Court observes that the relevant General Order does not contain this language, but states, "If an inmate wishes to appeal the grievance response, the inmate shall have fourteen (14) calendar days from receipt of the response to appeal." [74-4 at 9, ¶ 17.] Similarly, the relevant Inmate Handbook states: "If you do not agree with the grievance decision, you have fourteen (14) calendar days from receipt of the decision to appeal." [74-5, at 26, ¶ 7.]

Rule 56.1(d). L.R. 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." L.R. 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); L.R. 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." L.R. 56.1(e)(3).

Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. [76.] As noted above, Plaintiff did not respond to the motion despite being given several opportunities to do so. The Court therefore accepts as true Defendants' Statement of Facts. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Nevertheless, Defendants still must demonstrate that they are entitled to judgment as a matter of law. See *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

      **B.**     **Exhaustion**

The Prison Litigation Reform Act ("PLRA") requires an inmate who brings a civil rights complaint to first exhaust his administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); see, *e.g.*, *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005); *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). This requirement is mandatory; "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). The administrative process,

7

which typically involves the filing of a grievance, is intended to allow correctional facilities "to address [issues] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). To fulfill the exhaustion requirement, an inmate must comply with the procedures and deadlines established by the correctional facility's policies. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). Because failure to exhaust is an affirmative defense, the burden is on the defendant to demonstrate that the inmate failed to exhaust. *Maddox*, 655 F.3d at 720.

### III. Analysis

Defendants argue that because Plaintiff failed to appeal the responses he received to any of the four relevant grievances, he did not adequately exhaust his administrative remedies. Defendants do not address whether Plaintiff was required to appeal these grievance responses if he had received treatment as requested within the time period allotted for appeal.

While the PLRA requires exhaustion of all available remedies, it does not require an inmate to "appeal grievances that were resolved as he requested and where money damages were not available." *Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005). In *Thornton,* the prisoner plaintiff complained about his cell conditions and the poor condition of his mattress in separate grievances, but those conditions were resolved before the expiration of the time to appeal the grievance responses he received. *Id.* at 694–95. Because there was no possibility of further relief, the Seventh Circuit found that the plaintiff had fulfilled his duty to exhaust his administrative remedies. *Id.* at 695–96.

In order to frame this issue, the Court sets forth the following incomplete timeline of events, taken from the operative complaint and the summary judgment materials. The First Amended

Complaint alleges that Plaintiff noticed the black mark on his forearm on September 8, 2016, was treated at Cermak Health Services for an apparent spider bite on that date and was prescribed an antibiotic and ibuprofen. [See 15 at ¶¶ 16-18.] The complaint alleges that Plaintiff's condition "rapidly deteriorated" from there, causing Plaintiff to seek additional treatment on September 10, 2016, and September 13, 2016. [*Id.* at ¶¶ 19-23.] Plaintiff contends that Defendants failed to properly diagnose his condition, and on September 14, 2016, Plaintiff was admitted to Cermak Hospital with a lump that was "oozing blood and pus." [*Id.* at ¶¶ 23-25.] At that time, Dr. De Funiak allegedly told Plaintiff to squeeze the lump with gauze dressing, and when that did not work, medical staff allegedly attempted to "force" the infection out by pushing down on the infected area with a large book. [*Id.* at ¶¶ 26-27.] Plaintiff subsequently was placed on an IV for 48 hours, and advised that he risked losing his arm by having delayed treatment to that point. [*Id.* at ¶ 28.] A subsequent biopsy was positive for MRSA. [*Id.* at ¶ 29.]

Plaintiff further alleges that after his release from Cermak (which apparently occurred on or about September 15, 2016) Plaintiff was sent to Division 2 and then to Division 11, where on each occasion he was forced to go "several days" without adequate dressing changes under the supervision of Merriweather and Nurse Burns. [*Id.* at ¶ 30.] Plaintiff contends that the delay in diagnosing and treating his infection caused nerve damage. [*Id.* at ¶ 31.]

As noted above, Plaintiff was transferred from Division 2 to Division 11 on September 22, 2016. [74 at ¶ 22.] He remained in Division 11 until February 10, 2017. [*Id.* at ¶ 23.] It is unclear how long the alleged problem with the dressings persisted. Plaintiff's last grievance on the issue (Grievance 4) was dated September 28, 2016. [74-6 at 20.]

Plaintiff did not receive a response to Grievance 1 until October 4, 2016. [74-6 at 11.] In that grievance, dated September 12, 2016, Plaintiff complained that the "spider bite" was getting

9

worse and the pain was "unbearable." [74-6 at 10.] He requested medical attention and asked that his injury be assessed and "taken seriously." [*Id.*] By the time Plaintiff received a response to that grievance on October 4, 2016, he been evaluated by a nurse on September 8, 2016, treated again on September 21, 2016, and was scheduled for follow-up. [*Id.* at 11.]

It is unclear why Plaintiff would have appealed this grievance response, as his grievance requested medical attention that he had received by the time he received a response. The same is true as to Grievance 2, in which Plaintiff similarly complained that his injury had not been taken seriously. [74-6 at 13-14.] Plaintiff received a response to this grievance on October 4, 2016, listing at least some of the treatment he had received to that point. [*Id.* at 15.] Although Plaintiff complains in both of these grievances about a delay in diagnosing the cause of the pain and swelling in his arm, it had been diagnosed and treated by the time Plaintiff received a response, so it is unclear what further relief he could have obtained by appealing.

In regard to Plaintiff's wound dressing, Grievance 3 complained that the dressing had not been changed in two days (from September 16 through September 18). [74-6 at 17.] Plaintiff requested that "better care" be provided to inmates. [*Id.*] Plaintiff received a response on October 15, 2016, indicating that he had been seen by a provider on September 21, 2016, "with wound improvement." The response further stated that Plaintiff was scheduled for follow-up care in November. [*Id.* at 18.] It appears that by the time Plaintiff received the grievance response, he had received treatment and his wound was healing.

Similarly, Grievance 4 complained of a failure to receive dressing changes between September 26, 2016, and September 28, 2016, this time while Plaintiff was housed in Division 11. [74-6 at 20.] Plaintiff once again requested "proper medical care." [*Id.*] The grievance response Plaintiff received on October 20, 2016, indicated that Plaintiff's wound was "healing well" as of

10

October 9, 2021. [*Id.* at 21.] It further indicated that the CRW had taken the step of notifying the Division 11 dispensary staff of Plaintiff's complaint. [*Id.*] Again, it appears (although the record is not entirely clear) that Plaintiff's issues in regard to this dressings had been resolved by the time he received this grievance response.[4]

Defendants contend that Plaintiff should have pursued these grievances through the appeals process, "but do not articulate any additional relief [he] could have received by continuing to pursue his grievance[s]." *Carroll v. Chapman*, 2017 WL 6622802, at *3 (W.D. Wis. Dec. 28, 2017). Such a situation falls within the parameters of *Thornton*, 428 F.3d at 696, where the Seventh Circuit held that prisoners are not required to appeal favorable decisions where there is no possibility of further relief.

In circumstances similar to those at issue here, courts have not found a failure to exhaust administrative remedies. For example, in *Randall v. Kammerer*, 2020 WL 1888928, at *1, 8 (N.D. Ill. Apr. 16, 2020), the prisoner plaintiff complained of coughing, vomiting blood, and severe abdominal pain. By the time the prisoner received a grievance response, he had been treated by a doctor, alleviating his ailment. *Id.* at *8. He did not appeal that response. *Id.* Observing that the plaintiff no longer suffered from the problem identified in the grievance, the Court concluded that the prisoner did not need to do more to exhaust his remedies. *Id.* Similarly, in *Osterberg v. Meyers*, 2020 WL 91992, at *1, 3 (N.D. Ill. Jan. 7, 2020), the plaintiff, an inmate at the Winnebago County Jail, complained about alleged lack of treatment for ankle and back problems. The grievance responses that the plaintiff received appeared to address his complaints by scheduling him for

---

[4] Defendants argue that the "relevant time period" of Plaintiff's amended complaint is September 8, 2016, through February 10, 2017 [75 at 2], but it is unclear how they determined that February 10, 2017, is the relevant end date for Plaintiff's complaints, other than the fact that Plaintiff apparently was held in Division 11 through this date. There is no indication in the record that Plaintiff continued to have trouble with his wound or wound dressings into February 2017, or even as late as October 20, 2016, when he received the last grievance response.

medical visits. *Id.* at *3. The Court observed that even though the jail's grievance procedure provided that it included at least one level of appeal, "the PLRA does not require appeals of favorable responses." *Id.*

The same is true in this case. As noted above, the language in the Jail's General Order and Handbook does not specify that an appeal is required when the inmate agrees with the grievance response. But even if, as stated on the grievance, an appeal was required, this would not apply to circumstances where the Plaintiff had received treatment and his condition had been resolved. See *Thornton*, 428 F.3d at 696–97. Numerous other courts have reached similar conclusions. See, *e.g.*, *Carson v. Shah*, 2019 WL 2338502, at *3 (S.D. Ill. June 3, 2019) (prisoner who received the relief requested when he was sent to an ophthalmologist within the timeframe for an appeal did not need to appeal denial of grievances); *Martin v. Cook Cty. Dep't of Corr.*, 2013 WL 1181491, at *5 (N.D. Ill. Mar. 20, 2013) (detainee at Cook County Jail who complained of dental pain and received referral to dental services was not required to appeal grievance response); *Jones v. Bates*, 2012 WL 43464, at *3 (N.D. Ind. Jan. 6, 2012) (because prisoner's medical issue was resolved, there was no need to appeal that portion of grievance); *Myers v. McAuley*, 2002 WL 31006131, at *3 (N.D. Ill. Sept. 5, 2002) ("Because the plaintiff's concerns about the lack of medical attention were supposedly being addressed and rectified by the health care unit, there would have been no reason to appeal the decision to the next level of review.").

IV. **Conclusion**

For the reasons stated above, Defendants' motion for summary judgment on exhaustion grounds is denied. As noted above, in light of the potential complexity of the case going forward, the Court has requested that recruited counsel assist Plaintiff as set forth above. The Court encourages recruited counsel to visit the Court's Pro Bono web page at

http://www.ilnd.uscourts.gov/Pages.aspx?page=ProBono (case sensitive) for various resources related to pro bono representation.

Dated: March 24, 2022

                                                Robert M. Dow, Jr.
                                                United States District Judge